||||
|---|---|
| UNITED STATES DISTRICT COURT | |
| DISTRICT OF NEVADA | |

| | |
|---|---|
| Chester County Employees' Retirement Fund, derivatively on behalf of nominal defendant Echostar Corp., <br><br>Plaintiff <br><br>v. <br><br>Charles W. Ergen, et al., <br><br>Defendants | 2:13-cv-00325-JAD-GWF <br><br>**Order Denying Plaintiff's Renewed Motion for Attorneys' Fees and Reimbursement of Expenses** <br><br>[ECF No. 62] |

This is the second of two shareholder-derivative actions that challenged the EchoStar Corporation's compensation committee's 2011 decision to award its chairman and principal shareholder Charles Ergen 1.5 million stock options—700,000 more than the annual cap set by the company's stock-incentive plan. Without first making a demand on EchoStar's current board of directors, two shareholders—Greg Jacobi and the Chester County Employees' Retirement Fund ("the Fund")—separately sued EchoStar, Ergen, and several of EchoStar's directors for fiduciary breaches and unjust enrichment. Mere weeks later, Ergen acknowledged the error; the committee cancelled the 2011 award and waited until 2013 to reissue the 700,000 prematurely-issued options. The Fund acknowledged that the cancellation mooted its claims.[1]

The Fund now moves for an award of nearly $1.4 million in attorneys fees and expenses from EchoStar, arguing that its lawsuit caused EchoStar's cancellation of the improper grant, resulting in a $6.9 million savings to the corporation.[2] Although fee awards may be appropriate when a derivative action confers a common benefit to shareholders, I find that the Fund has not shown that it deserves credit for EchoStar's cancellation, that the cancellation ultimately benefitted the corporation, or that its without-demand lawsuit was meritorious when filed, so I deny the motion.

---

[1] ECF No. 19 at 2.

[2] ECF No. 62 at 28.

## Background

### A. EchoStar and the 700,000 Ergen stock options

EchoStar is a Nevada holding company whose wholly-owned subsidiaries design and distribute digital set-top boxes for satellite TV service providers and cable companies and provide digital broadcast and satellite services to DISH Network and other satellite services.[3] Ergen was Chairman and a director of EchoStar since 2007, he is the company's majority shareholder, and he served as CEO until 2009. When Ergen stepped down as CEO, he was relieved of any significant management responsibility. Ergen is the majority shareholder and Chairman of the board of EchoStar's spinoff company, DISH Network, which is also one of EchoStar's primary customers. On March 31, 2011, EchoStar's three-member compensation committee, consisting of Tom Ortolf, C. Michael Schroeder, and Joseph Clayton, awarded Ergen 1.5 million stock options to purchase EchoStar's Class A common stock, valued at $21.6 million.[4]

### B. The first-filed action: *Jacobi v. Ergen*

On December 5, 2012, EchoStar shareholder Greg Jacobi filed a derivative action against Ergen and other EchoStar directors and officers in this court.[5] The complaint was served on EchoStar on December 12, 2012.[6] Jacobi alleged that the option grant violated the limitations of EchoStar's shareholder-approved amended and restated 2008 stock incentive plan (the "SIP"), which provides, "no Participant may be granted Awards . . . in the aggregate in respect of more than 800,000 Shares in any one calender year. . . ."[7] Jacobi contended that the award of options for the excess 700,000 shares two years after Ergen stepped down as CEO was an ultra vires act, and that the sheer size of the entire 1.5 million-option award "was fundamentally unfair to the Company for a

---

[3] This summary comes from *Jacobi v. Ergen et al*, 2:12-cv-02075-JAD-GWF, ECF No. 57 (Order Granting Motion to Dismiss). It is not intended as any finding of fact.

[4] *Id*. at ¶¶ 5, 48.

[5] 2:12-cv-02075-JAD-GWF, ECF No. 1.

[6] 2:12-cv-02075-JAD-GWF, ECF No. 7 (affidavit of service).

[7] 2:12-cv-02075-JAD-GWF, ECF No. 1 at ¶ 47.

host of reasons."[8] Jacobi did not make a pre-suit demand on the board to challenge the award, and he alleged that demand would have been "a futile and useless act because the Current Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action."[9]

**C.    The Fund's second-filed derivative suit**

Thirteen days after the *Jacobi* suit was filed and eight days after it was served on EchoStar, the Fund filed its derivative complaint, challenging the very same conduct.[10] Three weeks later, Ergen filed with the Securities and Exchange Commission a Form 4/A in which he acknowledged that the stock-option grant exceeded his limit and that the company was cancelling the issuance of the improperly granted 700,000 options.[11] The Fund's complaint was originally filed in the United States District Court for the District of Colorado, and when the defendants moved to stay it in light of *Jacobi*, or to transfer it to this court, the Fund acknowledged that "The cancellation of the 700,000 stock options granted to Ergen" had "rendered [its] claims moot" and the Fund intended "to voluntarily dismiss" its complaint "as moot," preserving its claim for attorneys' fees and expenses, for which a motion had already been filed.[12] The Colorado court transferred the Fund's case here, and I denied the original motion for fees and expenses without prejudice to the Fund's ability to re-urge it after I resolved dismissal motions in *Jacobi*.

I dismissed Jacobi's complaint with leave to amend because he failed to sufficiently plead

---

[8] *Id.* at ¶¶ 50–51.

[9] *Id.* ¶ 75.

[10] ECF Nos. 1, 9.

[11] ECF No. 19 at 2; *see also* ECF No. 62-1 at 3, ¶ 5 (acknowledging that the cancellation of the 700,000 stock options on January 8, 2013, resulted in all the recovery that the plaintiff could have hoped for).

[12] *Id.*

Page 3 of 9

demand futility.[13] Jacobi timely filed an amended complaint;[14] defendants again moved to dismiss it,[15] and I granted that motion, ultimately dismissing Jacobi's suit with prejudice for failure to properly plead demand futility.[16] Jacobi's appeal is pending before the Ninth Circuit.[17]

### D. The Fund's motion for fees and expenses

Baldly claiming that its second-filed suit was the catalyst for EchoStar's cancellation of the improperly issued stock options that saved the company $6.9 million, the Fund renews its motion and asks me to order the corporation to pay the Fund's lawyers $1,384,600 for their efforts—which represents 20% of the value of that benefit—under the common benefit doctrine.[18] The defendants and EchoStar oppose the motion, arguing that it was Jacobi's complaint, if anything, that alerted them to the problem, but neither lawsuit was meritorious when filed, and the cancellation only postponed the issuance of the 700,000 options, so there was no real benefit to the company from which a common-fund award is warranted. Jacobi argues that the Fund only piggy-backed on his own complaint and, if anyone deserves a fee award, it's him.[19] Having considered the parties' extensive briefing, I find that the Fund has not demonstrated its entitlement to fees and expenses in this case, and I deny the renewed motion.[20]

---

[13] 2:12-cv-02075-JAD-GWF, ECF No. 48.

[14] 2:12-cv-02075-JAD-GWF, ECF No. 49.

[15] 2:12-cv-02075-JAD-GWF, ECF No. 50.

[16] 2:12-cv-02075-JAD-GWF, ECF No. 57.

[17] *Jacobi v. Ergen et al.*, USCA Case No. 16-15695.

[18] ECF No. 62.

[19] I granted Jacobi permission to intervene in this case for purposes of this motion. ECF No. 69.

[20] I find this well-briefed matter suitable for resolution without oral argument. L.R. 78-2.

## Discussion

"Federal courts . . . have the power to award attorneys' fees 'in the exercise of their equitable powers.'"[21] That power includes the ability to "award attorneys' fees when 'successful litigation confers a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.'"[22] This common-fund or common-benefit doctrine has been recognized to apply not just in class-action cases but also in shareholder derivative suits. "Where a derivative suit has conferred substantial benefits to a corporation and its shareholders, plaintiff can recover attorneys' fees and expenses from the corporation."[23] The parties agree that when a derivative action has been mooted by the defendants' post-filing actions, "plaintiffs should be awarded fees if: (1) the action was 'meritorious' at the time of filing, (2) a substantial benefit was conferred to an ascertainable class, and (3) a causal connection existed between the action and the benefit."[24]

**A.     The Fund's action was not meritorious when filed.**

A claim is meritorious when filed "if it can withstand a motion to dismiss on the pleadings" and "the plaintiff possesses knowledge of probable facts [that] hold out some reasonable likelihood of ultimate success."[25] The Fund's derivative suit is materially similar to Jacobi's, and it suffers from the same fatal flaws that caused me to dismiss Jacobi's lawsuit with prejudice for failing to make a pre-suit demand.

Before a shareholder can file suit on the company's behalf, he must first demand that the

---

[21] *Wininger v. Si Management, LP*, 301 F.3d 1115, 1120 (9th Cir. 2002) (quoting *Hall v. Cole*, 412 U.S. 1, 5 (1973)).

[22] *Id*. (quoting *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393–94 (1970)).

[23] *Cooperstock v. Pennwalt Corp.*, 820 F. Supp. 921, 924 (E.D. Penn. 1993).

[24] *Id*. at 923 (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375); *see also* ECF Nos. 62 at 17; 66 at 9.

[25] *Chrysler Corp. v. Dann*, 223 A.2d 384, 387 (Del. 1966).

board obtain for the company "the action that [he] desires."[26] The pre-suit demand requirement is excused only if the plaintiff demonstrates in his complaint that the demand would have been futile.[27] To determine demand futility, the district court applies the law of the state of incorporation—in this case, Nevada.[28] When a shareholder files derivative claims without a pre-suit demand, he must plead "with particularity . . . the reasons for not obtaining the action or not making the effort."[29] The relevant facts "must be put forth in the complaint and not merely in subsequent briefs."[30] This heightened pleading burden "is . . . more onerous than that required to withstand a Rule 12(b)(6) motion."[31]

When Jacobi and the Fund filed suit, EchoStar's board consisted of seven directors: Charles Ergen, Michael Dugan, R. Stanton Dodge, Tom Ortolf, C. Michael Schroeder, Anthony M. Federico, and Pradman P. Kaul.[32] I found that Jacobi had sufficiently pled that Ortolf, Schroeder, and Ergen lacked the ability to exercise independent and disinterested business judgment to consider a pre-suit demand, that everyone agreed that Federico (a new director) was independent, and that the real dispute lay over Kaul, Dugan, and Dodge. But I ultimately found that Jacobi had not pled facts to suggest that any of those three directors was compromised, so I dismissed Jacobi's complaint for failing to make the pre-suit demand on the Board.[33]

---

[26] *Shoen v. SAC Holding Corp.* 137 P.3d 1179, 1184 (Nev. 2006).

[27] *See id.*

[28] *See In re Silicon Graphics, Inc. Secs. Litig.*, 183 F.3d 970, 989–90 (9th Cir. 1999) (*abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008); ECF 1 at ¶ 10 (alleging that EchoStar is a Nevada corporation).

[29] FED. R. CIV. P. 23.1.

[30] *Ryan v. Gifford*, 918 A.2d 341, 357 (Del. Ch. 2007).

[31] *Weiss v. Swanson*, 948 A.2d 433, 441 (Del. Ch. 2008) (quotation omitted).

[32] ECF No. 1 at ¶ 45.

[33] 2:12-cv-02075-JAD-GWF, ECF No. 57. I incorporate my findings, analysis, and conclusion from the materially similar Jacobi case here, specifically including ECF Nos. 48, 57.

The Fund argues that it pled facts to show a reasonable doubt about Dugan and Dodge's independence, so the failure to sufficiently plead demand futility would not have been a basis to dismiss its suit. It basically cites the same facts that Jacobi pled and argued, and which I found insufficient: Ergen recommends Dugan's compensation for his role as EchoStar's President and CEO; and Ergen has input into Dodge's compensation as an executive officer of DISH.[34] The Fund argues that other courts have found similar facts sufficient to excuse pre-suit demand.

But the cases that the Fund cites do not render the Fund's allegations about Dugan and Dodge sufficient or compel a different demand-futility decision than I reached in *Jacobi*. Each is based on the premise that a board member is naturally beholden to the person who controls his employment and compensation.[35] And in each, the level of control was greater than what the Fund has alleged here. Dugan and Dodge are alleged to be beholden to Ergen because he "recommends" and "in part determine[s]" their compensation and because EchoStar's SEC filings show that the company did not consider them to be independent.[36] Ergen's ability to provide input on Dugan and Dodge's compensation is simply not the level of control recognized to excuse pre-suit demand, and the independence standards for demand-futility and for public filings are entirely different and thus not dispositive.[37] I thus find that the Fund's complaint would have suffered the same fate as Jacobi's had

---

[34] ECF No. 62 at 20–24.

[35] *See, e.g.*, *In re Ezcorp Inc. Consulting Agreement Derivative Litigation*, 2016 WL 301245 (Del. Ch. Jan. 25, 2016) (target of suit was controlling shareholder); *In re Student Loan Corp. Derivative Litig.*, 2002 WL 75479, at *3 (Del. Ch. Jan. 8, 2002) (target of action was "a majority stockholder in a position to displace" the board member "from his lucrative CEO position"); *Mizel v. Connelly*, 1999 WL 550369 (Del. Ch. July 22, 1999) (target was company's Chairman, CEO, and largest stockholder).

[36] ECF No. 1 at 13, ¶ 45.

[37] Under the NASDAQ standard, any inside director would be considered not independent. This is not the applicable standard for analyzing demand futility. Because independence has a different meaning in the demand-futility analysis than under these additional standards, I find these designations of Dugan and Dodge immaterial to this analysis. *Compare* NYSE Listed Company Manual § 303A.02 (2009), and NASDAQ Listing Rule § 5605 *with Rales*, 634 A.2d at 936; *see also Stockman-Sann v. McKnight*, 2013 WL 8284817, *9 (C.D. Cal. March 25, 2013) (declining to consider these standards in demand-futility analysis); *accord*, *In re Google, Inc. Shareholder*

the Fund not abandoned it as moot three weeks in: it would not have survived a 12(b)(6) challenge because the Fund did not plead facts to show that its pre-suit demand on the Board was excused as futile. The Fund's action was therefore not meritorious when filed.

**B.     The Fund has not demonstrated that a substantial benefit was conferred to an ascertainable class.**

Even if I were to conclude that the Fund's action was meritorious when filed, I would deny the motion for fees and costs because the Fund has not shown that the cancellation conferred a substantial benefit on the corporation and its shareholders. The problem with the stock-option award to Ergen was that it exceeded the "calendar year 2011" limit set by the SIP.[38] To remedy the violation, the corporation cancelled the 700,000 overage and held back that portion of the award, reissuing those options in April 1, 2013.[39] Although the Fund's expert, M. Travis Keath, states in his declaration that the value of the cancellation was $6,923,000,[40] he says nothing of the reissuance of the options in 2013. Defendants' expert, Kevin J. Murphy, deems Keath's decision to ignore the replacement options a valuation error and opines in his declaration that the net effect to the company was essentially a wash.[41] So the cancellation did not ultimately result in a $6.9 million benefit to the corporation and its shareholders, but merely a delay of the award with no net financial benefit. This net effect does not justify an award of fees and costs.

**C.     The Fund has not demonstrated that it was the catalyst for the corporation's action.**

When the plaintiff can demonstrate a meritorious action and a substantial benefit to the shareholders, "the burden then shifts to the defendant to prove that the lawsuit did not in any way

---

*Derivative Litig.*, 2013 WL 5402220, *7 (N.D.Cal. Sept. 26, 2013).

[38] ECF No. 1 at ¶ 30.

[39] ECF No. 66-7, ¶ 18.

[40] ECF No. 62-1 at 67–72, ¶ 10.

[41] ECF No. 66-7 at 11 ("Overall, it is my opinion that the accounting expense of the 700,000 options invalidly granted on March 31, 2011 was approximately equal to the accounting expense of the 700,000 options validly granted on April 1, 2013.").

cause their action which ultimately rendered the suit moot."[42] Because the Fund did not establish the first two elements, it cannot benefit from the presumption that it was the catalyst for the corporation's cancellation of Ergen's stock-option award.

But even if it were entitled to the presumption, I find that presumption rebutted. Jacobi filed and served his suit first, so I can reasonably infer that it was the Jacobi suit that put the corporation on notice of the allegation that the corporation's award exceeded the 2011 annual limit under the SIP. And there is nothing in the record suggesting that the credit goes to the Fund instead of Jacobi. I thus find that the Fund has not satisfied any factor that would justify a common-fund attorney's fees award in this case.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that Chester County Employees' Retirement Fund's Renewed Motion for Attorneys' Fees and Reimbursement of Expenses **[ECF No. 62] is DENIED**.

Dated this 31st day of July, 2017.

_____
Jennifer A. Dorsey
United States District Judge

---

[42] *Cooperstock v. Pennwalt Corp.*, 820 F. Supp. at 923.